THEANE EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
JEREMY S. SMITH, SBN 283812
jssmith@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

MATTHEW BALL, SBN 327028
mnball@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

Attorneys for Draper James, LLC, and Reese
Witherspoon

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LARYSSA GALVEZ, JUDITH LINDLEY, and NATALIE ANDERSON,<br><br>               Plaintiffs,<br><br>   v.<br><br>DRAPER JAMES, LLC, REESE WITHERSPOON, and DOES 1 THROUGH 10,<br><br>               Defendants. | CASE NO. 2:20-cv-04976-FMO-SK<br><br>**DEFENDANTS DRAPER JAMES, LLC'S AND REESE WITHERSPOON'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>**Hearing:**<br>Date:     October 8, 2020<br>Time:    10:00 a.m.<br>Courtroom: 6D, 6th Floor<br>Judge:   Hon. Fernando M. Olguin |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 8, 2020, at 10:00 a.m., or as soon thereafter as may be heard by the Honorable Fernando M. Olguin, in Courtroom 6D of this Court, Defendants Draper James, LLC ("Draper James") and Reese Witherspoon will and hereby do move the Court to dismiss with prejudice claims asserted by Plaintiffs Judith Lindley, Natalie Anderson, and Ann-Marie Matter ("Plaintiffs") in the above-captioned action under Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs' lawsuit seeks to punish Defendants for a goodwill offer of a limited number of free dresses to teachers, in recognition of their efforts to continue educating children during the COVID-19 pandemic.  But as a matter of law, Plaintiffs cannot turn Defendants' desire to acknowledge teachers into a lawsuit for several reasons: (1) all the claims fail because they rely on a gross mischaracterization of the Instagram post; (2) Plaintiffs cannot bring their claims because they allege neither residency nor injury in any state; (3) all claims fail because they fail to adequately allege Defendants caused them harm; (4) the claims of unjust enrichment and violations of California Business and Professions Code section 17200 all fail to establish the lack of an adequate remedy at law; (5) Plaintiffs fail to establish that they are "consumers" under the California Legal Remedies Act or allege that any reliance or misrepresentation occurred; (6) Plaintiffs lack standing under section 17204 and fail to establish any unfair, unlawful, or fraudulent conduct under California Business and Professions Code section 17200; and (7) Plaintiffs cannot show any violation of New York General Business Law section 349.

Defendants' Motion to Dismiss is based on this Notice of Motion and Memorandum of Points and Authorities submitted herewith, Plaintiffs' First Amended Complaint, the previously filed Request for Judicial Notice (Doc. 26) and the ensuing Court order (Doc. 30), and other such matters that the Court may consider.

Gibson, Dunn &
Crutcher LLP

1       This Motion is made following the conference of counsel pursuant to Local Rule

2 7-3, which took place on July 27, 2020.

3 **RELIEF SOUGHT**

4       Defendants seek an order dismissing the entirety of Plaintiffs' First Amended

5 Complaint with prejudice.

6

7 DATED: September 3, 2020              GIBSON, DUNN & CRUTCHER LLP

8

9                     By:       */s/ Theane Evangelis*

10                              Theane Evangelis

11                     Attorneys for DEFENDANTS DRAPER JAMES, LLC, AND REESE WITHERSPOON

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2    I. INTRODUCTION ................................................................................................ 10

3    II. FACTUAL BACKGROUND ............................................................................. 11

4    III. LEGAL STANDARD........................................................................................ 14

5    IV. ARGUMENT..................................................................................................... 15

6         A.    All of Plaintiffs' Claims Fail Because They Are Premised on a
               Misreading of the Instagram Post. ...................................................... 15
7
         B.    All of Plaintiffs' Claims Fail Because Plaintiffs Fail to Allege
8               Harm. .................................................................................................... 18

9         C.    All of Plaintiffs' Claims Also Fail Because They Do Not Allege
               Either Residency or Injury in California or New York......................... 20
10
         D.    The Equitable Claims Fail Because There Is an Adequate Remedy
11              at Law. ................................................................................................... 21

12        E.    The CLRA Claim Has Other, Additional Flaws That Require
               Dismissal. ............................................................................................. 23
13
         F.    Plaintiffs' UCL Claim Also Fails Because the Promotion Was as
14              Advertised. ............................................................................................ 24

15        G.    Plaintiffs' Claim Under New York General Business Law Fails. ........... 26

16   V. CONCLUSION ................................................................................................... 27

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

5

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
No. 09 MDL 2007-GW PJWX, 2009 WL 9502003 (C.D. Cal. July 6,
6
2009) ................................................................................................................ 20

7

*Ashcroft v. Iqbal*,
8
556 U.S. 662 (2009) ......................................................................................... 14

9

*Babadjanian v. Deutsche Bank Nat'l Tr. Co.*,
No. CV 10-2580-MMM, 2010 WL 11549885 (C.D. Cal. July 19,
10
2010) ................................................................................................................ 19

11

*Bardin v. DaimlerChrysler Corp.*,
12
136 Cal. App. 4th 1255 (2006) ........................................................................ 25

13

*Belfiore v. Procter & Gamble Co.*,
14
94 F. Supp. 3d 440 (E.D.N.Y. 2015) ............................................................... 19

15

*Bell Atl. Corp. v. Twombly*,
16
550 U.S. 544 (2007) ......................................................................................... 14

17

*Cadena v. Am. Honda Motor Co.*,
No. CV184007MWFPJWX, 2019 WL 6646700 (C.D. Cal. July 17,
18
2019) ................................................................................................................ 20

19

*Campbell v. Freshbev LLC*,
20
322 F. Supp. 3d 330 (E.D.N.Y. 2018) ............................................................. 27

21

*Capaci v. Sports Research Corp.*,
22
No. 19-CV-3440-FMO, 2020 WL 1482313 (C.D. Cal. Mar. 26, 2020) ................. 14

23

*Casillas v. Northgate Gonzalez Markets, Inc.*,
No. SACV1600064CJCKESX, 2016 WL 10966424 (C.D. Cal. May
24
11, 2016) .......................................................................................................... 23

25

*Chansue Kang v. P.F. Chang's China Bistro, Inc.*,
26
No. CV 19-02252 PA (SPX), 2020 WL 2027596 (C.D. Cal. Jan. 9,
27
2020) ................................................................................................................ 20

28

Gibson, Dunn &
Crutcher LLP

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ....................................................................23

*Corcoran v. CVS Health Corp., Inc.*,
    No. 15-CV-3504 YGR, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ..................21

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) .......................................................................... 20, 21

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) ...............................................................................25

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ................................................................................24

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................................................................25

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................................17

*Gomez v. Jelly Belly Candy Co.*,
    No. 17-CV-0575, 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017) ..........................22

*Gonzalez v. Ford Motor Co.*,
    No. CV 19-652 PA (ASX), 2019 WL 1364976 (C.D. Cal. Mar. 22,
    2019) ....................................................................................................................22

*Griffith Co. v. Hofues*,
    201 Cal. App. 2d 502 (1962) ................................................................................18

*Haley v. Casa Del Rey Homeowners Ass'n*,
    153 Cal. App. 4th 863 (2007) ...............................................................................18

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................ 16, 17

*Hilton v. Apple Inc.*,
    No. CV137674GAFAJWX, 2014 WL 10435005 (C.D. Cal. Apr. 18,
    2014) ....................................................................................................................26

*Hodge v. Superior Court*,
    145 Cal. App. 4th 278 (2006) ...............................................................................21

Gibson, Dunn &
Crutcher LLP

*In re iPhone 4s Consumer Litig.*,
    637 F. App'x 414 (9th Cir. 2016) ...................................................... 18, 24

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) .............................................................. 21

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................ 15

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 1999) ............................................................ 17

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ....................................................................... 18

*Larsen v. Vizio, Inc.*,
    No. 14-SACV-1865, 2017 WL 3084273 (C.D. Cal. June 26, 2017) ...................... 22

*Madrigal v. Hint, Inc.*,
    No. CV1702095VAPJCX, 2017 WL 6940534 (C.D. Cal. Dec. 14,
    2017) ................................................................................................. 22

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003) ............................................................ 21

*Mollicone v. Universal Handicraft, Inc.*,
    No. 216CV07322CASMRWX, 2017 WL 440257 (C.D. Cal. Jan. 30,
    2017) ................................................................................................. 20

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ............................................... 22

*Mullins v. Premier Nutrition Corp.*,
    No. 13-CV-01271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) .................... 22

*Nguyen v. Barnes & Noble Inc.*,
    No. SACV12812JLSRNBX, 2015 WL 12766050 (C.D. Cal. Nov. 23,
    2015) ................................................................................................. 21

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) ............................................................... 27

*Painter v. Blue Diamond Growers*,
    No. 17-cv-2235, 2017 WL 4766510 (C.D. Cal. May 24, 2017) .......................... 15

*Pitre v. Wal-Mart Stores, Inc.*,
  No. SACV171281DOCDFMX, 2017 WL 11093619 (C.D. Cal. Nov. 8,
  2017) ................................................................................................................. 25

*Red v. Kraft Foods, Inc.*,
  No. CV 10-1028-GW AGRX, 2012 WL 5504011 (C.D. Cal. Oct. 25,
  2012) ................................................................................................................. 26

*Saitsky v. DirecTV, Inc.*,
  No. CV 08-7918 AHM (CWX), 2009 WL 10670629 (C.D. Cal. Sept.
  22, 2009) ........................................................................................................... 25

*Schmitt v. Younique LLC*,
  No. SACV171397JVSJDEX, 2017 WL 10574060 (C.D. Cal. Dec. 4,
  2017) ................................................................................................................. 20

*Scott v. Cal. African Am. Museum*,
  No. CV1402273ABPJWX, 2015 WL 12803454 (C.D. Cal. Feb. 23,
  2015) ................................................................................................................. 15

*Sonner v. Premier Nutrition Corp.*,
  962 F.3d 1072 (9th Cir. 2020) ......................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................... 10

*US Ecology, Inc. v. State of California*,
  129 Cal. App. 4th 887 (2005) ........................................................................... 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 15

*Worldhomecenter.com, Inc. v. KWC Am., Inc.*,
  No. 10 CIV. 7781 NRB, 2011 WL 4352390 (S.D.N.Y. Sept. 15, 2011) ................. 27

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30,
  2017) ................................................................................................................. 23

*Yunker v. Pandora Media, Inc.*,
  No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................. 23

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ........................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17204 ............................................................. 18, 24

Cal. Bus. & Prof. Code § 17500 .................................................................. 25

Cal. Bus. & Prof. Code § 17539.1 ......................................................... 25, 26

Cal. Bus. & Prof. Code § 17539.15 ....................................................... 25, 26

Cal. Civ. Code § 1761.............................................................................. 23

Cal. Civ. Code § 1770.............................................................................. 24

Cal Civ. Code § 1780............................................................................... 18

Cal. Civ. Code § 1781.100......................................................................... 25

Cal. Civ. Code § 1798.150......................................................................... 26

N.Y. Gen. Bus. Law § 369................................................................ 25, 26, 27

**Other Authorities**

Judicial Council of California Civil Jury Instructions (2020) No. 303 ........................ 18

New Oxford American Dictionary (3d ed. 2010)............................................. 16

1 Witkin, *Summary 11th Contracts* § 1053 (2019) ....................................... 18

Gibson, Dunn & Crutcher LLP

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.  INTRODUCTION**

3    This lawsuit is an unjust attempt to exploit Draper James' good intentions to

4    honor the teacher community by gifting hundreds of free dresses.  To acknowledge the

5    efforts of educators during the COVID-19 pandemic, Draper James posted on

6    Instagram that teachers were eligible to apply for a free dress, and that the offer was

7    "valid while supplies last":

8
9
10
11
12
13
14
15
16
17
18
19
20



21
22    Doc. 26-2 (emphasis added).[1]

23

24

25
26
27
28

---

[1]  As the Court recognized in its order on Defendants' previously filed request for judicial notice, the Instagram post is appropriate to consider under the incorporation-by-reference doctrine "because plaintiffs quoted and/or relied extensively on this document in the FAC. (See Dkt. 23, FAC at ¶¶ 4, 28-29)."  Doc. 33 at 3; *see also id.* at 4; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (Courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Plaintiffs attempt to avoid common sense, and the plain language of the Instagram post, by arguing that this promotion obligates Draper James to give a free dress to every teacher who responded.  No reasonable respondent would share Plaintiffs' belief that a boutique clothing line would be awarding a limitless supply of free dresses.  And the words "apply," "winners," and the phrase "offer valid while supplies last" made clear that entrants had an *opportunity* to receive a free dress—an opportunity that they received.  Plaintiffs never explain how they could have been harmed by Draper James' good intentions, and its free promotion to award a limited number of dresses to hard-working teachers.

Defendants previously raised all of these deficiencies in their first motion to dismiss.  Doc. 19.  And yet Plaintiffs' amended complaint has not corrected a single one of them.  Providing any further opportunities to amend would be fruitless, because Plaintiffs cannot change the plain language of the Instagram post.  This suit should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND

Judith Lindley, Natalie Anderson, and Laryssa Galvez filed the original complaint in this lawsuit on April 21, 2020.  Doc. 1-2.  They claimed the free dress giveaway mentioned in the Instagram post was actually an unlimited, binding contract that required Draper James to send a free dress to "close to a million" teachers across the country.  *Id.* ¶¶ 2–3, 19.  The original plaintiffs did not claim to be teachers, never alleged that they signed up for the promotion, and did not claim to have read or relied on any statements made by Defendants.  Still, they brought a putative class action lawsuit on behalf of all persons "who signed up for the Draper James offer" and "provided personal information" in order to enter the promotion.  *Id.* ¶ 17.

The Instagram post incorporated by reference in the complaint refuted the very premise of the lawsuit.  It said Draper James wanted to "say thank you," and recognize the hard work of the teacher community "[d]uring quarantine."  Doc. 26-2.  It instructed those interested to "apply" for a free dress by clicking on a link on the

Draper James Instagram page, and announced that "winners" would be selected on April 7. *Id.* It expressly stated it was valid "while supplies last." *Id.*

The original complaint admitted that such disclosures were made, but claimed they were "vague illusory comment[s]" that provided "no indication" as to the limited number of dresses available. Doc. 1-2 ¶ 31. According to the complaint, the failure to include a "*specific* limitation on quantity" made it unclear that the giveaway "was limited to 250 dresses." *Id.* ¶ 4 (emphasis added). The original plaintiffs further claimed that the "initial FAQ [Frequently Asked Questions] disseminated by Defendants" also contained no "disclos[ure] [of] a limitation," and that there was "no indication this was some form of lottery." *Id.* ¶ 31. Tellingly, despite repeatedly mentioning them, the original complaint did not include a copy of either the Instagram post or the FAQ.

Those interested in the promotion could sign up by clicking a link on the Draper James Instagram page, which directed potential participants to an entry form. *Id.* ¶ 27. To participate in the giveaway, the form asked applicants to supply their contact information, including information to allow Draper James to verify they were teachers. *Id.* The complaint alleged that this information "could be exploited by cyber-criminals" or "sold," *id.* ¶ 2, though the plaintiffs did not allege that any of those hypothetical events occurred—just as they did not allege that they had signed up for the promotion in the first place.

The plaintiffs brought five causes of action against Defendants, claiming breach of contract, promissory estoppel, unjust enrichment, violations of the California Legal Remedies Act ("CLRA"), and violations of California Business and Professions Code section 17200 ("UCL"). *Id.* ¶¶ 49–100. Defendants moved to dismiss, explaining the Complaint disclosed only *two facts* about the named plaintiffs: their names, and that they were "each natural persons." Doc. 19 at 14. Without an allegation that the plaintiffs were "eligible for the promotion," "entered into the giveaway," or "relied on

the various 'misrepresentations' they allege[d]," all of the plaintiffs' legal claims were foreclosed.  *Id.*; *see also id.* at 15 n.3.

Though the plaintiffs had failed to include it, Defendants submitted a copy of the Instagram post and FAQ referenced in plaintiffs' original complaint with their Motion to Dismiss.  Docs. 20, 20-2, 20-3.  By using the words "apply," "winners," and "while supplies last," the Instagram post made clear that entrants would receive the *opportunity* to receive a free dress, not the free dress itself.  Doc. 19 at 16–17.

In response, the plaintiffs filed a First Amended Complaint ("FAC") on July 17, 2020.  Doc. 23.  Laryssa Galvez voluntarily dismissed her claims, and has been replaced by a new plaintiff, Ann-Marie Matter.  Doc. 22; Doc. 23 ¶ 11.  The current Plaintiffs now claim to be "educators" who "registered for [the giveaway] on or about April 7, 2020."  Doc. 23 ¶ 11.  They claim to have relied on "Defendants' promotional program," and have now removed any references to the FAQ.  *Id.*; *see id.* ¶ 34 ("Nothing in any initial *information* disseminated by Defendants disclosed a limitation . . . ." (emphasis added)).  Plaintiffs *still* do not claim to be residents of any particular state.

Rather than focus on the plain text of the Instagram post, Plaintiffs now rely heavily on the "context" surrounding the giveaway, including various press reports. *Id.* ¶ 38; *see id.* ¶¶ 28, 43.  Plaintiffs supply a laundry list of fashion companies and celebrities who allegedly "donated hundreds of thousands, if not millions, of dollars in relief without any conditions."  *Id.* ¶ 38.  They claim that Defendants did not state that "there were only 250 dresses that would be made available" until April 6, *id.* ¶ 48, and that had the company done so earlier, "it would have been publicly revealed that there was no comparison" with the other donations, *Id.* ¶ 39.

Plaintiffs also attempt to cast Draper James' sincere appreciation for educators as some sort of alleged scheme.  In addition to their prior claims, they now amend their UCL claim to include the allegation that Defendants did not comply with the statutes that govern "sweepstakes," and Plaintiffs add a new claim under New York General

Business Law section 349.  Doc. 23 ¶¶ 113–130.  Plaintiffs seek damages, injunctive relief, declaratory relief, specific performance, and attorneys' fees and costs, and interest.  *Id.* at 53–54, Prayer for Relief (1)–(7).

Defendants filed a motion to dismiss the FAC on July 31, 2020, which the Court denied without prejudice to refiling in compliance with the Court's directive to only include the Instagram post in any renewed motion to dismiss and not the FAQ and certain media reports about the promotion referenced in the prior motion.  Doc. 33.  This renewed motion to dismiss now follows.

### III.  LEGAL STANDARD

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Although a court analyzing a motion to dismiss "must accept the allegations of the complaint as true," it "is not required to accept legal conclusions" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Capaci v. Sports Research Corp.*, No. 19-CV-3440-FMO, 2020 WL 1482313, at *2–3 (C.D. Cal. Mar. 26, 2020) (citations omitted).  After stripping away the conclusory statements, the remaining factual allegations in a complaint must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation, internal quotation marks, and brackets omitted).  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Plaintiffs' fraud-based claims under the UCL and CLRA also must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which

requires that a plaintiff "state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (applying Rule 9(b) to UCL and CLRA claims).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Dismissal with prejudice is appropriate where amendment would be futile. *Painter v. Blue Diamond Growers*, No. 17-cv-2235, 2017 WL 4766510, at *3 (C.D. Cal. May 24, 2017); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).  This is particularly true where a party "has already amended" their "claim once, and [the] claim remains deficient."  *Scott v. Cal. African Am. Museum*, No. CV1402273ABPJWX, 2015 WL 12803454, at *3 (C.D. Cal. Feb. 23, 2015).

## IV.  ARGUMENT

The original complaint was deficient in many respects, as detailed in Defendants' prior motion to dismiss.  The FAC filed in direct response fares no better. Plaintiffs' claims continue to defy common sense and are based on a mischaracterization of the actual language of the promotion set forth in the Instagram post.  Plaintiffs have also failed to adequately allege harm and their equitable claims are precluded by the adequate-remedy-at-law doctrine, in addition to the unique flaws plaguing their UCL, CLRA, and New York General Business Law section 349 claims. This suit should be dismissed with prejudice.

## A.    All of Plaintiffs' Claims Fail Because They Are Premised on a Misreading of the Instagram Post.

This lawsuit is based on a misstatement of the plain language of the promotion. Plaintiffs allege that "Defendants made an offer that promised to render performance (providing new dresses) in exchange for consideration requested by Defendants (personal sensitive information from Plaintiffs and Class members)."  Doc. 23 ¶ 2. Nothing could be further from the truth.

Plaintiffs' argument that the Instagram post guaranteed every entrant a free dress is belied by the post itself. The actual words in the Instagram post instructed individuals to "*apply*" through an entry form. Doc. 26-2 (emphasis added). It announced that "*winners*" would be notified on April 7. *Id.* (emphasis added). Rather than indicating some sort of guarantee, the words and context made clear that signing up made one *eligible* to receive a dress ("apply"), and that *some* entrants would be selected to receive one ("winners"). The FAC claims that "winners" is "reasonably interpreted as those who accepted the offer, not an undisclosed number of a few people." Doc. 23 ¶ 28. Neither the dictionary nor common sense agree: a winner is "a person or thing that wins something," *Winner*, New Oxford American Dictionary, 1982 (3d ed. 2010), and people do not speak of "winning" things to which they are guaranteed.

To reinforce these points, the Instagram post stated that the offer was available "while supplies last." Doc. 26-2. Having previously conceded that this term was included in the Instagram post, Doc. 1-2 ¶ 4, Plaintiffs now attempt to mischaracterize it, adding in the FAC that the "while supplies last" disclosure was in "a *small* parenthetical." Doc. 23 ¶ 4 (emphasis added). That is plainly not true. "While supplies last" was written in the exact same size text as the rest of the Instagram post, as this Court can see for itself. Doc. 26-2. The post itself was also very succinct. No reasonable person could read those words and conclude that a free dress would be delivered to all who signed up. Doc. 23 ¶ 31; *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (dismissing lawsuit based on magazine solicitation because "[a]ny reasonable recipient, even if unsophisticated, understands that these [materials are] part of an advertising campaign").[2]

---

[2] Plaintiffs also cite an academic article for the proposition that "offers that contain phrases that indicate there is a scarcity in supply, without stating what that scarcity actually is, have been shown to actually stimulate interest and invitations to act rather than provide the alleged disclosure claimed by Defendants." Doc. 23 ¶ 35 & n.4. It is unclear how this relates to a claim for breach of contract, misrepresentation, or any other legal claim.

Gibson, Dunn &
Crutcher LLP

16

As Defendants have explained previously, the language in the Instagram post here is far more clear than the announcement in *Freeman v. Time, Inc.*, where the Ninth Circuit considered two personalized mailers for a "Million Dollar Dream Sweepstakes" promotion.  68 F.3d 285, 287 (9th Cir. 1995); *see* Doc. 19 at 17.  Large type on the mailers in *Freeman* read: "If you return the grand prize winning number, we'll officially announce that MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS SCHEDULED TO BEGIN," while smaller type included language that the "selection of the winner" would take place by April 1, 1994.  68 F.3d at 287.  The Ninth Circuit rejected the same argument that Plaintiffs make here: that the promotional language left "room for the reader to draw an inference that he or she *has* the winning number."  *Id.* at 290.  It explained that "no reasonable addressee could believe that the mailing announced that the addressee was already the winner," as any ambiguity was "dispelled by the promotion as a whole."  *Id.* (citing *Haskell*, 857 F. Supp. at 1403).  If the broad announcement that an individual "*has won*" over a million dollars and "*payment is scheduled to begin*" was not enough to guarantee a prize in *Freeman*, then allowing entrants to "apply" to a "while supplies last" promotion cannot create a contractual obligation to provide a limitless supply of free dresses here.

In an attempt to circumvent the clear language of the Instagram post, the FAC invokes the purported "context" in which the giveaway occurred.  Doc. 23 ¶ 38.  Plaintiffs reel off a list of fashion companies and celebrities who donated money with "no strings attached," *id.* ¶¶ 5, 38–39, though their list includes companies that explicitly conditioned their donations on sales.  *See, e.g.*, *id.* ¶ 38 (Loewe donated 40 euros "[f]or every product of the Paula's Ibiza collection sold"; Lady Gaga donated "20% of one week of Haus Labs' online profits"; Kendall Jenner "[l]aunched new merchandise collection whose proceeds will go to [charity]").  Tellingly, *none* of the companies or individuals listed gave something away *to everyone who signed up*, and even if they had, such "context" does not overcome the clear terms of the promotion, or supplant common sense.  *See Klamath Water Users Protective Ass'n v. Patterson*,

204 F.3d 1206, 1210 (9th Cir. 1999) ("[W]hen the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."). It may be that "Oprah Winfrey['s]. . . donat[ion] [of] $10 million for COVID-10 relief" was greater than that of other celebrities. Doc. 23 ¶ 38. But there is no cause of action for suing individuals or entities who decided to contribute a different amount.

In the end, those who signed up for the promotion received exactly what they expected: an opportunity to win a free dress. That the Plaintiffs may not have been selected as one of the lucky recipients does not give rise to a breach-of-contract claim, much less fraud, or any other claim. Plaintiffs do not, and could not, allege they understood the Instagram post as a guarantee of a free dress to all. *See In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 416 (9th Cir. 2016). All of Plaintiffs' claims should be dismissed.

## B.    All of Plaintiffs' Claims Fail Because Plaintiffs Fail to Allege Harm.

Plaintiffs' entire lawsuit fails for a second reason: they fail to plausibly allege that they were injured as a result of Defendants' conduct, a bedrock element of each of their claims.

Each of Plaintiffs' claims require a plausible allegation of causation and resulting harm. For their breach-of-contract claim, Plaintiffs must adequately allege that the "breach of contract was a substantial factor in causing [their] harm." Judicial Council of California Civil Jury Instructions (2020) No. 303; *see also Haley v. Casa Del Rey Homeowners Ass'n*, 153 Cal. App. 4th 863, 871–72 (2007). Promissory estoppel and unjust enrichment also require a causal connection to the defendant's alleged conduct, *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 904–05 (2005); *Griffith Co. v. Hofues*, 201 Cal. App. 2d 502, 508 (1962); 1 Witkin, *Summary 11th Contracts* § 1053 (2019), and both the UCL and the CLRA require a plaintiff to show that his *injury* occurred "as a result of" the defendant's allegedly unlawful conduct. *See* Cal. Bus. & Prof. Code § 17204; Cal Civ. Code § 1780; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011). "Causation is an

'essential' element of any New York General Business Law section 349 claim" as well: each Plaintiff must show that "she was *injured as a result* of the insufficient or false disclosures." *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 446 (E.D.N.Y. 2015) (emphasis added) (citations omitted).

Plaintiffs do not, and cannot, allege any harm from being a non-winning entrant in the promotion. The Instagram post to which Plaintiffs responded never promised a free dress upon entry, so the fact that Plaintiffs were not selected as winning entrants cannot provide the basis for a claim. Moreover, Plaintiffs' voluntary provision of identifying information to enter the promotion does not constitute an injury—Plaintiffs do not allege that anything has happened to this information, and the most they can assert is that they have received some promotional emails (which Plaintiffs could elect to unsubscribe to).

An additional problem appears on the face of Plaintiffs' pleading: Plaintiffs allege that the entry deadline was "April 5," but Plaintiffs allege that they signed up "on or around April 7, 2020." Doc. 23 ¶¶ 11, 28. Plaintiffs tried to walk back these allegations, claiming that they meant to use an April 4 date instead. Doc. 30 at 9. Plaintiffs did not explain the reason for their prior allegations or the purported mistake, and they have not sought leave to amend their complaint, despite having ample time to do so. Of course, they cannot "amend their complaint via arguments included in their opposition." *Babadjanian v. Deutsche Bank Nat'l Tr. Co.*, No. CV 10-2580-MMM (RZx), 2010 WL 11549885, at *6 (C.D. Cal. July 19, 2010). But even if Plaintiffs were allowed to use the April 4 date, it would still not demonstrate that they were injured by anything that Defendants did or did not do: submitting a non-winning entry for a free dress is simply not a cognizable harm, especially when Defendants did not promise Plaintiffs they would receive a free dress simply because they applied for the promotion.

**C.     All of Plaintiffs' Claims Also Fail Because They Do Not Allege Either Residency or Injury in California or New York.**

Even aside from the fact that Plaintiffs' lawsuit is premised on a misreading of the Instagram post and they do not plausibly allege harm, the FAC is ripe for dismissal for another, independent reason.  Though Plaintiffs bring claims under the laws of California and New York, they do not claim to be residents of either state, nor do they claim that any "deception" occurred in New York.  Their claims must therefore be dismissed.

"Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Chansue Kang v. P.F. Chang's China Bistro, Inc.*, No. CV 19-02252 PA (SPX), 2020 WL 2027596, at *3 (C.D. Cal. Jan. 9, 2020) (citation omitted).  "Indeed, 'courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce.'" *Mollicone v. Universal Handicraft, Inc.*, No. 216CV07322CASMRWX, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) (citation omitted); *see In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW PJWX, 2009 WL 9502003, at *6–8 (C.D. Cal. July 6, 2009); *Cadena v. Am. Honda Motor Co.*, No. CV184007MWFPJWX, 2019 WL 6646700, at *2 (C.D. Cal. July 17, 2019).  Thus, where "a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Schmitt v. Younique LLC*, No. SACV171397JVSJDEX, 2017 WL 10574060, at *4 (C.D. Cal. Dec. 4, 2017) (citation omitted).

For claims arising under New York General Business Law section 349, "two divergent lines of decisions have developed." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).  Courts look to either (1) "where the deception of the plaintiff occurs and require, for example, that a plaintiff actually view a deceptive statement while in New York"; or (2) "where the

Gibson, Dunn &
Crutcher LLP

underlying deceptive 'transaction' [took] place." *Id.*  Under the second approach, merely alleging that a defendant "has its headquarters and principle place of business in the state of New York" is insufficient, as are "allegations that 'the emanation of [a] deceptive marketing strategy [arose] from'" a defendant's "principal place of business" in the state. *Nguyen v. Barnes & Noble Inc.*, No. SACV12812JLSRNBX, 2015 WL 12766050, at *3 (C.D. Cal. Nov. 23, 2015).

Despite being notified of this defect in their original complaint, Doc. 19 at 15 n.3 (notifying Plaintiffs that "there are no details as to where they reside"), Plaintiffs still do not allege that they reside or were injured in any particular state, Doc. 23 ¶ 11.  Nor do they allege that they viewed the Instagram post in New York, or that the underlying transaction took place in that state.  They therefore cannot invoke the laws of California or New York—states "to which they have alleged no connection." *Corcoran v. CVS Health Corp., Inc.*, No. 15-CV-3504 YGR, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016).

It is not enough for Plaintiffs to assert that they "will provide information to Defendants at their request to verify that they . . . have standing to assert such claims."  Doc. 23 ¶ 11 n.2.  "Absent unusual circumstances" not applicable here, Plaintiffs must "*allege affirmatively* the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (emphasis added).  The failure to do so here warrants dismissal of all Plaintiffs' claims.

**D.    The Equitable Claims Fail Because There Is an Adequate Remedy at Law.**

Plaintiffs' equitable claims have another independent flaw—they are unavailable because Plaintiffs have not established that they lack adequate remedies at law.  "[T]he UCL provides only for equitable remedies," *see Hodge v. Superior Court*, 145 Cal. App. 4th 278, 284 (2006), and "[u]njust enrichment is an equitable rather than a legal claim," *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087,

1091 (9th Cir. 2003).  Because Plaintiffs have not demonstrated an inadequate remedy at law, these claims for equitable relief cannot proceed.

As the Ninth Circuit explained last month, "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution . . . in a diversity action."  *Sonner v. Premier Nutrition Corp.*, 962 F.3d 1072, 1081 (9th Cir. 2020).  Thus, Plaintiffs must establish that they "lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL," *id.*, and unjust enrichment, *Larsen v. Vizio, Inc.*, No. 14-SACV-1865, 2017 WL 3084273, at *6 (C.D. Cal. June 26, 2017).  The question is not whether Plaintiffs are *likely* to prevail on their legal claims, but whether, assuming they *could* prevail, the available remedy would be "adequate." *Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018).  Even where plaintiffs have inadequately pleaded claims at law, as in this case, courts still dismiss plaintiffs' equitable causes of action.  *See, e.g.*, *Gomez v. Jelly Belly Candy Co.*, No. 17-CV-0575, 2017 WL 8941167, at *2 (C.D. Cal. Aug. 18, 2017); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016).

The inadequate-remedy-at-law doctrine applies with full force to equitable claims plead "in the alternative," as "[l]egal and equitable claims based on the same factual predicates are not true alternative theories of relief but rather are duplicative." *Gonzalez v. Ford Motor Co.*, No. CV 19-652 PA (ASX), 2019 WL 1364976, at *6 (C.D. Cal. Mar. 22, 2019) (citation omitted).  Accordingly, courts regularly dismiss UCL and unjust enrichment claims when brought alongside claims for breach of contract and damages under the CLRA.  *Madrigal v. Hint, Inc.*, No. CV1702095VAPJCX, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017).

Here, Plaintiffs seek monetary relief for their breach-of-contract claims, *see* Doc. 23 ¶ 78, and have now added a claim for damages under the CLRA, *id.* ¶ 111.

Having pleaded no facts suggesting these legal remedies would be inadequate, Plaintiffs cannot bring their UCL or unjust enrichment claims as a matter of law.

**E.      The CLRA Claim Has Other, Additional Flaws That Require Dismissal.**

In addition to the global deficiencies with Plaintiffs' lawsuit, there are three additional reasons the CLRA claim fails as a matter of law: (1) Plaintiffs are not "consumers"; (2) the CLRA specifically allows while-supplies-last promotions; and (3) no reliance or misrepresentation occurred.

*First*, Plaintiffs are not "consumers" who can invoke the CLRA. *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011). This "strict requirement," *id.*, mandates that only "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes" may invoke the statute, Cal. Civ. Code § 1761(d). The phrase "by purchase or lease" requires money to be exchanged: the "generalized notion that the phrase 'purchase' or 'lease' contemplates any less than tangible form of payment . . . finds no support under the specific statutory language of the CLRA." *Claridge*, 785 F. Supp. 2d at 864; *Casillas v. Northgate Gonzalez Markets, Inc.*, No. SACV1600064CJCKESX, 2016 WL 10966424, at *3 (C.D. Cal. May 11, 2016) (plaintiff who "sought a free concert ticket" was not a "'consumer'"). For this reason, federal courts in California have repeatedly rejected the "theory" Plaintiffs offer here, namely that the "transfer of [personally identifiable] information" constitutes a "'purchase' or 'lease' under the CLRA." *Id.*; *see also Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *12 (N.D. Cal. Mar. 26, 2013); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *33 (N.D. Cal. Aug. 30, 2017) (rejecting "Plaintiffs' theory that the mere transfer of [personally identifiable information] renders . . . a 'purchase' or 'lease'" under the CLRA). Because Plaintiffs allege only that they "provided the[ir] personal information" to Defendants, Doc. 23 ¶ 10, and do not allege that they actually paid any money to participate in the promotion, this Court

should dismiss their claim under the CLRA for failure to establish that Plaintiffs are consumers.

*Second*, even if Plaintiffs could invoke the statute, the CLRA specifically *allows* for while-supplies-last promotions.  The "unfair or deceptive acts" described in the CLRA include "[a]dvertising goods or services with intent not to supply reasonably expectable demand, *unless the advertisement discloses a limitation of quantity*."  Cal. Civ. Code § 1770(a)(10) (emphasis added).  The FAC assails Defendants for failing to include a "*specific* limitation on quantity."  Doc. 23 ¶ 4 (emphasis added).  But there is nothing in section 1770(a)(10) that requires the limitation of quantity to be "specific," or precise as to the exact number of goods available.  It simply requires a disclosure of "a limitation"—exactly what Draper James did in the Instagram post.

*Finally*, Plaintiffs' CLRA claim fails because no misrepresentation occurred. Courts dismiss CLRA claims where "it is not plausible that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (citation omitted).  As explained previously, *see supra* 15–18, it is not plausible that a significant portion of the public would believe that Draper James was offering an unlimited supply of free dresses through its promotion.  *See In re iPhone 4s Consumer Litig.*, 637 F. App'x at 416.

## F.     Plaintiffs' UCL Claim Also Fails Because the Promotion Was as Advertised.

Plaintiffs' UCL claim fails for all the reasons described above: Plaintiffs' case rests on a reading of the Instagram post that defies its plain language, they failed to adequately allege harm, they do not allege residency in California, and there is an adequate remedy at law.  Moreover, Plaintiffs do not have standing under the UCL. Plaintiffs claim they have "lost money or property" as required by section 17204 because they "loss of control of personal non-public employment information" and allegedly received less for their personal information than promised.  Doc. 23 ¶ 120.

But it is well established that personal information is not considered "lost money or property" under the UCL.  *Pitre v. Wal-Mart Stores, Inc.*, No. SACV171281DOCDFMX, 2017 WL 11093619, at *4 (C.D. Cal. Nov. 8, 2017); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 714–15 (N.D. Cal. 2011).

In addition, Plaintiffs cannot plausibly allege that Defendants' conduct was unfair, unlawful, or fraudulent.  "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Saitsky v. DirecTV, Inc.*, No. CV 08-7918 AHM (CWX), 2009 WL 10670629, at *2 (C.D. Cal. Sept. 22, 2009) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006)).

Plaintiffs have failed to plausibly allege that any injury was not outweighed by countervailing benefits, and the "harm" they complain of could have been avoided if they had read the Instagram post.  *See supra* 18–19.  Plaintiffs cannot transform plain text of the Instagram post into a "practice [that] offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," as is required for "unfair" conduct under the UCL.  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1263 (2006).  Nor can Plaintiffs transform the giveaway into something "unlawful."  Plaintiffs allege that Defendants' conduct was "unlawful" because it violated (1) the CLRA; (2) the California Consumer Privacy Act (CCPA), Cal. Civ. Code § 1798.100; (3) California Business & Professions Code section 17500, which applies to false or misleading statements in advertising; (4) New York General Business Law section 369(e); and (5) California Business & Professions Code sections 17539.1 and 17539.15 *et seq.*, which apply to "contest[s] or sweepstakes."  Doc. 23 ¶ 117–19.  None of these statutes provide Plaintiffs relief.

Defendants have already explained that the CLRA does not apply.  *See supra* 23–24.  The CCPA, meanwhile, cannot be used as a "basis for a private right of action

under any other law."  Cal. Civ. Code § 1798.150(c).  And Plaintiffs' argument under Business & Professions Code section 17500 fails for the same reasons as their arguments as to Defendants' "fraudulent" conduct: there is no fraud when a plaintiff "read[s] a true statement" and then "assume[s] things . . . *other than* what the statement actually says."  *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).  Plaintiffs' attempt to incorporate New York General Business Law section 369(e) through the UCL is also foreclosed, as "foreign state law [may not] serve as the basis for a UCL claim."  *Hilton v. Apple Inc.*, No. CV137674GAFAJWX, 2014 WL 10435005, at *4 (C.D. Cal. Apr. 18, 2014).

Plaintiffs also fail to establish a violation of the laws that apply to "sweepstakes," California Business & Professions Code sections 17539.1 and 17539.15 *et seq.*  Even assuming purely for the sake of argument that Defendants were operating a "sweepstakes" under the statute, Defendants never "[m]isrepresent[ed] . . . the odds of winning [a] prize," nor did they claim that the "*number of participants* ha[d] been significantly limited."  Doc. 23 ¶ 59 (emphasis added) (citing Cal. Bus. & Prof. Code § 17539.1).  Defendants also did not fail to disclose the "exact nature and approximate value of the prizes when offered," *id.*, as those selected in the giveaway *chose* which dress they wanted to receive on the Draper James website.  The remainder of Plaintiffs' claims rest on the proposition that they would not have entered into the giveaway had Defendants posted various "Official Rules" on their website.  *Id.* ¶ 120.  But even if Plaintiffs *had* entered a promotion with those "Official Rules," they *still* would not be guaranteed a free dress—the harm Plaintiffs complain of (the lack of a dress) was simply not caused by any of the alleged wrongful conduct.

## G.    Plaintiffs' Claim Under New York General Business Law Fails.

Even if Plaintiffs could bring a claim under New York law—which they cannot, *see supra* 20–21—their claims under New York General Business Law section 349 would still fail.  Two requirements of claims brought under that statute are missing:

there was no misleading communication, and the communications on which Plaintiffs rely did not cause any injury.

To successfully assert a claim under section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Whether conduct was "materially misleading" is an objective inquiry, "meaning 'the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 339 (E.D.N.Y. 2018) (citation and quotation marks omitted). Defendants have already demonstrated that no reasonable person could construe the Instagram post to constitute a guarantee of a free dress to everyone. *See supra* 15–18. And Defendants have likewise explained that Plaintiffs' "injuries" did not occur "as a result" of the alleged misrepresentations. *See supra* 18–19. Accordingly, there is no basis for Plaintiffs' section 349 claim.[3]

## V. CONCLUSION

Draper James gifted hundreds of free dresses to honor the teacher community doing incredible work under trying circumstances. The post clearly explained that the dresses would be given to "winners" "while supplies last." Plaintiffs are bound by this language, and also by their allegation that they signed up for the promotion well after all of the material information was disclosed, and there was nothing fraudulent, misleading, or otherwise unlawful about Defendants' conduct. Plaintiffs have already had the opportunity to amend their complaint once, and no further amendment can

---

[3] Plaintiffs also repeatedly cite New York General Business Law section 369-e, though they do not actually list it as one of their claims. Doc. 23 ¶¶ 61, 117, 127. And for good reason: "the legislative scheme" where section 369-e is "found[] only envisions enforcement by the New York Attorney General, and does not refer to enforcement by private citizens." *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, No. 10 CIV. 7781 NRB, 2011 WL 4352390, at *8 (S.D.N.Y. Sept. 15, 2011) (citing N.Y. Gen. Bus. Law § 369-e).

Gibson, Dunn & Crutcher LLP

make the Instagram post say anything different.  Future amendment would therefore be futile, and this Court should dismiss the FAC with prejudice.

Dated:  September 3, 2020

GIBSON, DUNN & CRUTCHER LLP


By:  _____/s/ Theane Evangelis_____
Theane Evangelis

Attorneys for DEFENDANTS DRAPER JAMES, LLC AND REESE WITHERSPOON

Gibson, Dunn & Crutcher LLP